IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE MCMUNN, Personal Representative of the Estate of EVA MYERS, <br><br> CARA D. STEELE, and <br><br> YVONNE SUE ROBINSON, <br><br>      Plaintiffs, <br><br>      v. <br><br> BABCOCK & WILCOX POWER GENERATION GROUP, INC., as Successor-in-interest to Babcock & Wilcox Company, B&W TECHNICAL SERVICES, INC., f/k/a B&W Nuclear Environmental Services, Inc., and ATLANTIC RICHFIELD CORPORATION, predecessors-in-interest, successors-in-interest, subdivisions and subsidiaries, <br><br>      Defendants. | CIVIL ACTION NO. |

## COMPLAINT IN CIVIL ACTION-JURY TRIAL DEMANDED

### I.

### INTRODUCTION

1.    Plaintiffs bring this action against Defendants seeking redress for injuries they have suffered in the past and will continue to suffer as a result of Defendants reckless, grossly negligent and negligent operation, remediation, and/or decommissioning of two nuclear materials processing facilities located in the Borough of Apollo and in Parks

Township, Pennsylvania. Throughout the operational history of these facilities, Defendants have caused the release of radioactive, hazardous and toxic substances into the surrounding environment. These releases have contaminated the air, soil, surface water and ground water in the surrounding communities. The harm directly and proximately caused by Defendants includes property damage and personal injuries.

## II.

### JURISDICTION

2.     This action arises under the United States Price Anderson Act, 42 U.S.C. §2210 et seq., as hereinafter more fully appears. Section 2210(n)(2) of that Act provides an express grant of jurisdiction to the United States District Courts and grants jurisdiction to this Court to consider Plaintiffs' claims.

3.     This action arises under the United States Atomic Energy Act, 42 U.S.C. §2011, et seq., and the United States Price Anderson Act, 42 U.S.C. §2210 et seq., as hereinafter more fully appears. Therefore, this court also has jurisdiction over Plaintiffs claims by virtue of 28 U.S.C. § 1331.

4.     Because this action also arises under laws of the United States regulating commerce, this court has jurisdiction over Plaintiffs' claims by virtue of 28 U.S.C. § 1337, as hereinafter more fully appears. Both the Atomic Energy Act, 42 U.S.C. §2011 et seq., and the Price Anderson Act, 42 U.S.C. §2210 et seq., regulate commerce in the nuclear fuels and nuclear power industry.

5.     Because Plaintiffs' state law claims arise out of the same case or controversy as their federal claims, this court has jurisdiction over those ancillary and pendent state law claims by virtue of 28 U.S.C. § 1367(a).

2

### III.

### VENUE

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b)(2) and 42

U.S.C. 2210(n)(2) because Plaintiffs' causes of action arose in this district and because

the nuclear incidents giving rise to Plaintiffs' claims transpired in this district.

### IV.

### THE PARTIES

7.      The following persons are Plaintiffs in this action:

a.      Michelle McMunn is suing in her individual capacity for injuries she

suffered as a result of Defendants' actions, and as personal representative of the

estate of her mother, Eva Myers. Eva Myers resided within 400 feet of the Apollo

facility site for the last fifty years of her life. As a result of Defendants' repeated

releases of hazardous and radioactive substances into the area surrounding the

Apollo facility Eva Myers developed lung cancer (adenocarcinoma.) While prior

to the development of the disease Eva Myers was an active mother and

grandmother, the onset of the lung cancer had a debilitating effect on her life,

causing her severe physical injury, pain and suffering, and mental and emotional

damage. These same diseases ultimately led to her death on February 19, 2008.

(1) Plaintiff Michelle McMunn proceeds in her individual capacity,

seeking redress for harm caused her by the Defendants. Michelle

McMunn brings suit for Eva Myers's wrongful death under the

Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. §8301. Michelle

McMunn is a proper beneficiary under that law, and her injuries, which

3

include medical and funeral expenses, and mental pain and suffering, are properly compensable under that Act.

(2) As representative of Eva Myers's estate, Michelle McMunn also bring a claim against Defendants for the injuries inflicted upon Eva Myers under Pennsylvania's survival statute, 42 Pa. C.S.A. §8302. She is the proper representative of the estate, and no claim for Eva Myers's personal injuries was brought against Defendants during her lifetime. Michelle McMunn seeks damages for Eva Myers's medical and other expenses incurred, as a result of her illness and eventual death. Michelle McMunn also seeks damages for the pain and suffering and mental anguish suffered by Eva Myers prior to her death. Because Defendants' conduct was reckless and/or grossly negligent, Michelle McMunn seeks punitive damages.

b.      Cara D. Steele is currently living and residing in Apollo, Pennsylvania. Cara Steele lived in the Apollo area throughout her entire life. She also visited friends and relatives in Apollo throughout her entire life. As a result of Defendants' repeated releases of hazardous and radioactive substances into the area surrounding their nuclear materials processing facilities, Cara Steele developed ovarian cancer, which caused her severe physical injury, pain, suffering, and mental and emotional damage, as well as extensive medical expenses and lost income.

c.      Yvonne Sue Robinson is currently living and residing in Leechburg, Pennsylvania. Yvonne Robinson lived in the Apollo-Leechburg area all of her life. Throughout her life, she lived and worked in close proximity to the

4

Defendants' facilities. She has visited friends and relatives in Apollo throughout her entire life. As a result of Defendants' repeated releases of hazardous and radioactive substances into the area surrounding their nuclear materials processing facilities, Yvonne Robinson developed breast cancer, which disease caused her severe physical injury, pain, suffering, and mental and emotional damage, as well as extensive medical expenses and lost income.

8.    The following persons are Defendants in this action:

a.    Defendant Babcock & Wilcox Power Generation Group, Inc., as successor-in-interest to Babcock & Wilcox Company, is a Delaware corporation with its principal place of business in the state of Ohio. Babcock & Wilcox, itself or through its agents, which include but are not limited to B&W Technical Services, Inc. (formerly named "B&W Nuclear Environmental Services, Inc.") and Pennsylvania Nuclear Service Operations, has been a principal operator of the nuclear materials processing facilities located in Apollo and Parks Township, Pennsylvania, from 1971 to present.

b.    B&W Technical Services, Inc. (formerly named "B&W Nuclear Environmental Services, Inc.") is a Delaware corporation headquartered in Virginia. This company has offices in the state of Pennsylvania, and conducts its affairs relevant to the Apollo and Parks Township facilities from those offices. Upon information and belief, B&W Technical Services, Inc. is currently the principal operator of the facilities in Apollo and Parks Township.

c.    Atlantic Richfield Corporation ("ARCO"), its predecessors-in-interest, successors-in-interest, subdivisions and subsidiaries, is a Delaware corporation

with its principal place of business in the state of Illinois. In 1967, ARCO entered

into an "Agreement and Plan of Reorganization" with Nuclear Materials and

Equipment Corporation ("NUMEC"), the original owner and operator of the

Apollo and Parks Township facilities. ARCO became the successor to NUMEC.

ARCO served as principal operator of the nuclear processing facilities located in

Apollo and Parks Township, Pennsylvania, from 1967 to 1971; upon information

and belief, ARCO remains liable for the Parks Township shallow landfill disposal

facility to the present time, and has been an active participant in the remediation

and/or decommissioning of both sites.

9.      At all times material hereto, each Defendant corporation, by itself or through its

agents, is or has been engaged in the transporting, generating, processing, using,

releasing, sale and distribution, and disposal of nuclear materials at facilities located in

Apollo and Parks Township, Pennsylvania. Such facilities are, or were at times material

hereto, owned by these Defendants or by their agents.

10.     Plaintiffs allege that for a period of many years, either they or their Decedent was

exposed to hazardous, toxic or radioactive substances released by Defendants into the

environment, including the air, water, and soil, of Apollo and/or Parks Township.

Plaintiffs allege that  either they or their Decedent have been exposed on numerous

occasions to hazardous, toxic or radioactive substances released or emanating from

Defendants' facilities, and have thereby inhaled, ingested or otherwise absorbed into their

bodies such substances. Plaintiffs further allege, and set forth with specificity below, that

either they or their Decedent have suffered personal injuries directly and proximately

caused by their exposure to hazardous, toxic or radioactive substances released, emitted,

6

or emanating from Defendants' facilities. Plaintiffs also allege that their property has been contaminated by pollutants released or emanating from Defendants' facilities.

11.     Plaintiffs allege that either they or their Decedent were exposed to hazardous, toxic or radioactive substances known to cause disease and that each exposure caused or contributed to Plaintiffs' or Plaintiffs' Decedent's injuries and/or death. Similarly, Plaintiffs claim that their property has been damaged by hazardous and/or radioactive waters released from Defendants' facilities and that these recurring releases caused or contributed to that property damage. Therefore, the doctrine of joint and several liability should be extended to apply to each Defendant herein.

## V.

## RELEVANT FACTS

12.     The Nuclear Materials and Equipment Corporation (NUMEC), these Defendants' predecessor in interest, was formed in the 1950's to develop the first privately owned commercial nuclear processing facility.

13.     Congress opened the door to private participation in the nuclear industry in 1954, when it amended the 1946 Atomic Energy Act to eliminate the federal government's exclusive right to possess, control and regulate fissionable nuclear materials. The 1954 amendments permitted private investors to obtain licenses from the Atomic Energy Commission to transfer and receive such materials, and to manufacture, produce, transfer, acquire, possess, use, import and export nuclear materials. 42 U.S.C. §2073, §2131-2134; §2136-2137.

14.     In 1957, NUMEC obtained its first license to handle and utilize nuclear source material, special nuclear material, and by-product material, and subsequently became the

first, and ultimately (for a time) the largest privately-owned operation for the processing and use of nuclear materials, including plutonium, uranium, strontium, cesium, and thorium.

15.    The NUMEC operations were housed in two facilities located about 40 miles northeast of the city of Pittsburgh, Pennsylvania, one in the Borough of Apollo and one in Parks Township, Pennsylvania, near Leechburg. These facilities manufactured the fuel materials that were to be used by both commercial and government customers.

16.    The Apollo facility is located in the narrow, steep-sided Kiskiminetas River Valley and is bounded on one side by the Kiskiminetas River. On the other side lies Warren Avenue and an Apollo residential neighborhood in which Plaintiffs and other residents live. Several hundred residents live within a 1000-foot half-circle of the facility; some homes are located only about 50 feet from the site.

17.    Upon information and belief, the Apollo facility was used primarily for the production of fissionable materials; these fissionable products could then be used as nuclear fuel. Specifically, enriched uranium or thorium was processed, pelletized, and loaded into fuel rods or cylinders for delivery to the customer in a form useful as a source of energy. Defendants also maintained a laundry at the Apollo facility, which was used to decontaminate clothing, military control rod mechanisms, and other items. Defendants also conducted certain waste treatment and disposal activities, including radioactive waste incineration, at the Apollo facility. In 1978, the Apollo facility ceased manufacturing high enriched uranium, and in 1984, it ceased manufacturing low enriched uranium. Plaintiffs believe that all processing activities were halted in late 1984, and that

8

subsequent to that time, the current operators have been conducting site evaluations and remedial work.

18.     The Parks Township facility is also located in the Kiskiminetas River Valley, approximately one mile from the community of Leechburg and close to the Kiskiminetas River. The residential community of Kiskimere lies to the immediate south of the site.

19.     Upon information and belief, the Parks Township facility was at one time the largest non-governmental plutonium development and fabrication operation in the United States. This part of the NUMEC operation was used to process and fabricate plutonium and plutonium-bearing materials, to fabricate nuclear fuel, to conduct research and development activities, and to recycle, salvage and reprocess scrap materials. The Parks Township facility was also used for disposal of radioactive waste. To Plaintiffs' knowledge and belief, some or all of these activities continued to occur at the Parks Township facility until the mid-to-late1990's.

20.     In 1967, NUMECs assets and liabilities were acquired by Defendant Atlantic Richfield Company (ARCO), which formed a subsidiary called "NUMEC' to hold the licenses and operate the Apollo and Parks Township facilities. Upon information and belief, ARCO's NUMEC subsidiary retained substantially all of the officers, directors and personnel who had been employed by the original NUMEC at the time of the de facto merger. In 1971, ARCO conveyed its interest in, and the greater part of its liability for, the NUMEC facilities to the Babcock & Wilcox Power Generation Group, Inc. (f/k/a Babcock & Wilcox Company), which became the licensee. Upon information and belief, Plaintiffs contend that ARCO retains some financial liability for the Apollo and Parks Township facilities and has continued to be an active participant in the remediation

and/or decommissioning activities at both facilities. Although Plaintiffs believe that the Babcock & Wilcox Power Generation Group, Inc. still holds all licenses necessary to operate the facilities, Plaintiffs also believe that B&W Technical Services, Inc., (formerly named "B&W Nuclear Environmental Services, Inc."), was most recently directing operations at the Apollo and Parks Township facilities.

21.     Operations at the Apollo and Parks Township facilities have used, processed, stored and/or produced uranium, enriched uranium, plutonium, and other radioactive materials constituting source, special nuclear, or by-product materials as defined in the Atomic Energy Act, 42 U.S.C. §2011 et seq. These radioactive materials, their by-products and their decay, or daughter products are highly toxic and carcinogenic. Operations at the two facilities have also involved the use of non-radioactive chemicals, many of which are classified as hazardous under applicable federal law. 42 U.S.C. §9601(14); 40 C.F.R. §302.4 [including tables]; 42 U.S.C. §6903(5); 40 C.F.R. §261.3; 40 C.F.R. Part 261, Subpart D.

22.     Upon information and belief, Plaintiffs contend that from the time NUMEC was created in 1957 to the present, the operations conducted at the Apollo and Parks Township facilities, including the remediation and/or decommissioning operations, have generated significant amounts of substances that are highly toxic to humans and the environment. Plaintiffs further contend that throughout these facilities' operating history, each licensee/operator has caused recurrent releases of radioactive and toxic materials into the environment, in complete disregard for applicable law, and for the health and safety of the surrounding communities and the local environment. These reckless, negligent and grossly negligent releases occurred in various ways, including the

discharge of radioactive and toxic materials into public water bodies, the emission of radioactive and toxic materials from facility stacks, the exposure of workers, who could then spread contamination outside the worksite, and improper disposal of materials which eventually leaked from storage tanks and other disposal systems.

23.     These reckless, negligent and grossly negligent releases have in turn resulted in the exposure of persons living and working in the area to toxic and radioactive materials. Because of the long half-life of the radioactive substances involved, persons living downwind from the facilities have also been exposed to these dangerous substances.

24.     Upon information and belief, the substances to which Plaintiffs and their communities were exposed include but are not limited to lead, beryllium, nickel, cadmium, chromium, trichloroethane, trichloroethylene, 8-hydroxyquinoline, trans- 1 ,2-diehloroethene, tributylphosphate, as well as the natural forms and various isotopes of cesium, strontium, technesium-99, thorium, americium, iridium, iodine, cobalt, radium, plutonium, and uranium. Some of these substances were used in the actual conduct of Defendants' operations, and some were by-products or decay ("daughter") products.

25.     Upon information and belief, Plaintiffs contend that these facilities were never, in their entire history, operated in compliance with applicable state, local and federal laws. Further, Plaintiffs contend that from the beginning, each Defendant engaged in a pattern of negligent, grossly negligent and reckless behavior in their operation, remediation and/or decommissioning of the facilities, and that this pattern of behavior was implemented with full knowledge of the hazards associated with the radioactive, toxic, and hazardous substances associated with their operations. Common among Defendants' transgressions was their practice of routinely exceeding federal stack emission

11

regulations, their violation of Pennsylvania regulations governing the disposal of wastes into surface water bodies, their failure to maintain equipment in proper working order, their failure to maintain adequate monitoring systems, and the constantly recurring exposure of their workers to unlawful and hazardous concentrations of radioactive and toxic materials.

26.     While conducting operations in a manner in clear violation of license conditions, other applicable laws, and common law duties, Defendants also sought to prevent details about their operations, and about the hazards of their operations, from reaching workers, Plaintiffs, or the surrounding community. During all relevant times, Defendants or their predecessors were aware of the fact that they were releasing toxic and radioactive materials into the air, water and soil. Defendants opted not to take sufficient remedial measures to eliminate or abate the emissions and releases, manifesting a casual attitude towards environmental and health safety, even though they were aware of the health risks posed to these Plaintiffs by such releases. At the same time, Defendants withheld information about the dangers from Plaintiffs and the community, and in some cases took steps to prevent public regulatory agencies from disclosing non-trade secret documents to the public.

27.     Defendants' failure to inform Plaintiffs of the health risks associated with the substances emitted from Defendants' facilities resulted in Plaintiffs being deprived of information crucial to their ability to limit their exposure or take other appropriate action.

28.     With full knowledge of the environmental and health hazards associated with the processing of nuclear fuel components, Defendants' predecessors chose to establish the first and largest privately-owned commercial nuclear processing facility in the midst of

the communities of Apollo and Parks Township, with facilities being located as little as 50 feet from homes. During the more than 30 years of the facilities' existence, each and every operator has conducted operations in callous disregard for health, safety and legal or regulatory mandates. This reckless, negligent, and grossly negligent conduct has resulted in the recurring release of radioactive, hazardous and toxic substances into the air, soil and water of Plaintiffs' communities. Defendants' failure to reveal the fact of the releases or the hazards to which the citizens of the Kiskiminetas Valley were exposed prevented Plaintiffs from taking steps to prevent the profound injuries that have been directly and proximately caused by Defendants' conduct. As a result, Plaintiffs have suffered injury to their personal, property and economic interests.

## VI.

### CAUSES OF ACTION

#### Count One

### CLAIMS ARISING UNDER THE PRICE ANDERSON ACT,

#### 42 U.S.C. §2210 et seq.

29.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 28 and incorporate them by reference as if fully set forth herein.

30.    Plaintiffs in this case assert numerous state common law claims against Defendants for injuries suffered. See ¶¶ 35 through 80.  Because these Defendants are regulated by the terms of the federal Price Anderson Act, as hereinafter more fully appears, those state law claims are statutorily deemed to arise under the federal Price Anderson Act, thereby stating a federal cause of action. 42 U.S.C. §2014(hh); §2210.

31.    Defendants in this action have, at times material to this action, conducted various activities involving nuclear materials. These activities include collecting and processing uranium, plutonium, thorium and other radioactive substances. They are therefore engaged in the development, use and control of atomic energy within the terms of the Atomic Energy Act, 42 U.S.C. §2011 et. seq. A consequence of these activities is the requirement that Defendants obtain a federal license authorizing their operations involving nuclear materials. 42 U.S.C. §§ 2210, 2073, 2092, 2093, 2111. Defendants or their predecessors and/or agents have at all relevant times held such federal licenses.

32.    In 1957, Congress amended the Atomic Energy Act to implement its policy to foster private sector participation in the nuclear energy industry. These 1957 amendments became known as the Price Anderson Act. The uranium, plutonium, thorium and other radioactive substances possessed, processed and stored by Defendants at the Apollo and Parks Township facilities are nuclear by-product materials, special nuclear materials anti/or source materials. 42 U.S.C. §2014(e), (z), (aa). Any release of these by-product, special nuclear, or source materials causing bodily injury, sickness, disease, death, loss or damage to property, or loss of use of property constitutes a "nuclear incident" under the terms of the Price Anderson Act. 42 U.S.C. §2014(q). Plaintiffs in this case contend that Defendants have operated the facilities in Apollo and Parks Township in a negligent, grossly negligent, and reckless fashion, and have as a consequence caused the frequent release of by-product, special nuclear, and/or source materials into the surrounding communities, thereby causing a "nuclear incident" or series of "nuclear incidents" under the Price Anderson Act.

33.    Plaintiffs further argue that these releases have exposed Plaintiffs and their property to highly dangerous materials. Plaintiffs have sustained serious injuries as a direct and proximate cause of these exposures. Plaintiffs have suffered bodily injury, sickness, disease or death and loss of or damage to property as a direct and proximate result of their exposures. Plaintiffs' cause of action therefore asserts legal liability based upon a "nuclear incident," or series of such incidents, and is consequently a "public liability action" within the terms of the Price Anderson Act. 42 U.S.C. §2014(w), §2014(hh).

34.    The Price Anderson Act further provides that in "public liability actions" arising under the Act, the law of the state in which the "nuclear incident" occurred shall provide the substantive rules of decision unless such law is inconsistent with the Act. The causes of action enumerated in ¶¶ 35 through 80 exist by virtue of the laws of the state of Pennsylvania, in which the "nuclear incident" occurred, and are therefore properly before this court as both federal causes of action arising under the Price Anderson Act and as state law claims ancillary and pendant to the federal claims. 42 U.S.C. §2014(hh), §2210.

## Count Two

## NEGLIGENCE

35.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 34 and incorporate them by reference as if fully set forth herein.

36.    Defendants owed to Plaintiffs a duty of due care which could only be satisfied by the legal, safe, and proper generation, use, management, storage and disposal of the radioactive, toxic and hazardous substances in Defendants' possession. Defendants had a specific duty to prevent the discharge or release of such substances which might harm the

persons, property or economic interests of Plaintiffs. Defendants also had a specific duty to warn or notify Plaintiffs of the potential hazards of exposure to radioactive, toxic and hazardous substances and to warn or notify Plaintiffs of the fact that discharges or releases of these substances had occurred, and were likely to occur in the future.

37.    Further, Defendants had a duty to comply with applicable state, federal, and local governmental laws, regulations, and guidelines applicable to persons generating, managing, storing, using, and disposing of radioactive, hazardous and toxic substances.

38.    Defendants breached these duties by their negligent, grossly negligent, and reckless generation, management, storage, use, and disposal of radioactive, hazardous and toxic substances and their negligent, grossly negligent, and reckless conduct of operations at the Apollo and Parks facilities, including remediation and decommissioning activities. Such conduct was in utter non-compliance with applicable federal, state and local laws, regulations, and guidelines. Defendants' reckless, grossly negligent, negligent, and illegal conduct resulted in the dangerous release of radioactive, hazardous and toxic substances into the communities surrounding the Apollo and Parks Township facilities. These actual and continued releases have subjected Plaintiffs to an unreasonable risk of harm, and to actual injuries to their persons, property and economic interests. Defendants also failed to warn Plaintiffs of the actual and threatened releases of such substances and of the reasonably foreseeable effects of such releases, an omission that was reckless, grossly negligent, and/or negligent. Finally, Defendants failed to act to prevent their releases from harming Plaintiffs.

39.    The operators of the NUMEC operations knew about the hazards associated with nuclear operations. Additionally, the legislative history of the Price Anderson Act, which

was passed with the active participation of private companies involved in the nuclear power industry, is rife with references to the extreme consequences that could be expected in the event of a nuclear accident. Indeed, the gravity of such consequences was a major contributing factor to the passage of the Price Anderson Act. These Defendants clearly knew or should have known that their generation, management, storage, use, disposal, releases, or discharges of radioactive, toxic and hazardous substances at the Apollo and Parks Township facilities would result in actual injuries and increased risks to the persons, property and economic interests of the public living near the facility.

40.     Defendants' negligence was a direct and proximate cause of Plaintiffs' injuries causing both actual present harm and creating an increased risk of harm to their persons, property and economic interests. Plaintiffs are entitled to recover damages for such injuries.

41.     All injuries and damages to Plaintiffs are substantial. Many of the injuries to the Plaintiffs, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

### Count Three

### NEGLIGENCE PER SE

42.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 41 and incorporate them by reference as if fully set forth herein.

43.     Plaintiffs contend that throughout their history, the facilities at Apollo and Parks Township were operated in non-compliance with applicable federal, state and local laws and regulations promulgated thereunder. Applicable statutes include but are not limited to the Atomic Energy Act, 42 U.S.C. §2011 et. seq., regulations issued thereunder in 10

C.F.R. Parts 20, 30, 40, 70, specifically including but not limited to 10 C.F.R. 20.103(a), 10 C.F.R. 20.106(b) and (g), 10 C.F.R. 20.201(b), 10 C.F.R. 20.203(d), 10 C.F.R. 20.206(a), 10 C.F.R. 20.401(b), 10 C.F.R. 20.405(a), (b), 10 C.F.R. 407(b)(1), (2), 10 C.F.R. 30.3, 10 C.FR. 70.24, licenses issued thereunder, including but not limited to license #SNM-145, #SNM-414, #SMB-502, #37-07031-01, #37-04456-01, #37- 04456-03, #37-04456-04, #37-04456-05, #C-4834, #C-3762; the Price Anderson Act, 42 U.S.C. §2210 et seq., and regulations issued thereunder; the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §9601, §9603, §9611(g), and regulations issued thereunder; the Toxic Substances and Control Act (TSCA), 15 U.S.C. §2601, §2607(e) and regulations issued thereunder; the Resource Conservation and Recovery Act (RCRA) 42 U.S.C. §6901, §6924(d), §6925 and regulations issued thereunder; the Emergency Planning and Community Right to Know Act (EPCRTKA) 42 U.S.C. § 11001, § 11023 and regulations issued thereunder; and applicable Pennsylvania air and water quality protection and waste disposal laws.

44.     These violations of applicable state, federal and local laws, regulations and guidelines were a direct and proximate cause of injuries to Plaintiffs. The increased risk of harm and the actual present harm to their person, property and economic interests are precisely the types of injuries these applicable laws were designed to prevent. Violation of these statutes thereby constitutes per se negligence.

45.     All injuries and damages to Plaintiffs are substantial. Many of the injuries to the Plaintiffs, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

**Count Four**

18

## ABSOLUTE OR STRICT LIABILITY

46.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 45 and incorporate them by reference as if fully set forth herein.

47.     The conduct of nuclear processing activities, including remediation and decommissioning activities, poses significant risk of harm to persons living and working in the vicinity of the operation. The consequences of nuclear accidents or incidents to health, property and the environment are extremely dire, and can be measured in the millions, if not billions of dollars. Nor is it possible to eliminate the risk by taking reasonable precautions. Finally, processing nuclear materials has never been a matter of common usage; indeed, prior to 1957, private operators were not permitted to engage in such activities at all. The conduct of nuclear processing activities at Defendants' Apollo and Parks Township operations clearly constituted abnormally dangerous activities.

48.     In addition, with the knowledge of the environmental and health hazards associated with the processing of nuclear fuel components, Defendants' predecessors chose to establish the first and largest privately-owned commercial nuclear processing facility in the midst of the communities of Apollo and Parks Township, with facilities being located as little as 50 feet from homes. Although Plaintiffs maintain the Defendants' activities were abnormally dangerous per se, the location of such activities in a well-populated area such as Apollo or Parks Township would independently have rendered them abnormally dangerous.

49.     As a direct and proximate result of the Defendants' collection, handling, processing, storage and disposal of radioactive, toxic and hazardous substances at the Apollo and Parks Township facilities, there have been releases of such substances into

the environment, thereby injuring Plaintiffs, which injuries include actual present harm and increased risks of harm to their persons, property and economic interests. Defendants' releases, and their conduct of abnormally dangerous activities in the Apollo and Parks Township facilities have also interfered substantially with Plaintiffs' private use and enjoyment of their property. These injuries constitute the type of harm the possibility of which made the Defendants' activities abnormally dangerous.

50.     Defendants are therefore strictly liable to Plaintiffs for all damages which have resulted and which will continue to result from the collection, handling, processing, storage and disposal of radioactive, toxic and hazardous substances at the Apollo and Parks Township facilities.

51.     All injuries and damages to Plaintiffs are substantial; however, many of the injuries to the Plaintiffs are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

**Count Five**

**PRIVATE NUISANCE**

52.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 51 and incorporate them by reference as if fully set forth herein.

53.     At all times material hereto, Plaintiffs were in lawful possession of their land. Defendants' use, occupation and operation of the facilities in Apollo and Parks Township have resulted in an intrusion upon Plaintiffs, significantly and negatively impacting upon the Plaintiffs' rights to use and enjoy their own property.

54.     Specifically, Defendants' unreasonable emissions and releases of radioactive, toxic and hazardous substances into the environment surrounding the Apollo and Parks

Township facilities were substantially offensive, discomforting, and annoying to persons of ordinary sensibilities, tastes, and habits living in the locality where the premises are located.

55.    Defendants' interference with Plaintiffs' rights was so unusual and excessive that it necessarily caused injury, damage, harm and inconvenience to Plaintiff, and it substantially, materially and unusually interfered with their comfort, and with the proper use and enjoyment of their own property. Such invasion of Plaintiffs' rights was unreasonable.

56.    Defendants' use, occupation and operation of its facilities in Apollo and Parks Township has resulted in an entry and intrusion onto the Plaintiffs' property without privilege, permission, invitation or justification. Defendants' conduct directly and proximately caused Plaintiffs' injuries, including actual physical harm to their persons, and actual or increased harm to their personal, property and economic interests. Plaintiffs are entitled to recover damages for such injuries.

57.    All injuries and damages to Plaintiffs are substantial. Many of the injuries to the Plaintiffs, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

## Count Six

## TRESPASS

58.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 57 and incorporate them by reference as if fully set forth herein.

59.    Plaintiffs were at all relevant times in possession of land they owned and/or occupied.

60.    Defendants knowing releases of toxic substances, pollutants and radiation into the neighborhoods surrounding both the Apollo and the Parks Township facilities, which releases resulted in the actual contamination of Plaintiffs' property, constituted an intentional intrusion and an interference with Plaintiffs' rights to use and enjoy such land.

61.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been unable to exclusively and peaceably enjoy the full use of their property.

62.    All injuries and damages to Plaintiffs are substantial. Many of the injuries to the Plaintiffs, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

### Count Seven

### MISREPRESENTATION AND CONCEALMENT

63.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 62 and incorporate them by reference as if fully set forth herein.

64.    Some or all of the Defendants, at various times, both negligently and/or failed to disclose to Plaintiffs material facts concerning the nature and the magnitude of the releases of radioactive, toxic and hazardous substances from Defendants' nuclear processing facilities in Apollo and Parks Township. Defendants further misrepresented and concealed the magnitude of such releases and the potential health risks and health effects of such activities, which effects were known to Defendants. Finally, Defendants have continued to make misrepresentations to members of the community regarding their ability to restore the Apollo and/or Parks Township facility sites such that those properties can safely be made available for unrestricted use.

65.     Each of these misrepresentations and/or concealments were made by Defendants individually, jointly and in conspiracy with each other, and were made with the intention of creating a false impression in the minds of the Plaintiffs as to the true environmental status of the community and the true health risks accompanying Defendants' releases of toxic, hazardous and radioactive substances such that Plaintiffs would be lulled into complacency, and would refrain from seeking redress or pursuing other remedial action.

66.     Plaintiffs reasonably believed and in good faith relied upon Defendants' misrepresentations and concealments in making decisions regarding seeking legal redress or pursuing remedial actions.

67.     Many of the Plaintiffs' injuries arising out of the releases of radioactive, toxic and hazardous substances by Defendants into the environment have been compounded by the passage of time and Plaintiffs' reliance upon Defendants' misrepresentations and concealments, Plaintiffs' injuries include both actual present harm and increased risk of harm to the person, property and economic interests of Plaintiffs. All injuries were directly and proximately caused by Plaintiffs' reliance upon Defendants' false and misleading representations, omissions and concealments. Plaintiffs sustained damages including injuries, illnesses, disabilities, and/or death. Plaintiffs are entitled to recover damages for such injuries.

68.     All injuries and damages to Plaintiffs are substantial. Many of the injuries to the Plaintiffs, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

## Count Eight

## CIVIL CONSPIRACY

69.   Plaintiffs repeat the allegations contained in Paragraphs 1 through 68 and incorporate them by reference as if fully set forth herein.

70.   Some or all of the Defendants, their officers and employees, and other persons and entities unknown to Plaintiffs, at various times, acted together with the common purpose of conducting operations at the nuclear processing facilities in Apollo and Parks Township in an unlawful manner, and with the further common purpose of unlawfully concealing operations at such facilities from the public and of concealing the fact that releases of toxic substances, radiation, and pollutants was occurring.

71.   In furtherance of this conspiracy, Defendants have taken overt steps to conceal the nature of plant operations from the public and from regulators, and have failed in their legal duty to disclose the fact that releases of toxic pollutants and radiation have occurred. Such concealment is a violation of law, and a violation of Defendants' duty to Plaintiffs as members of the community.

72.   In furtherance of this conspiracy, Defendants have also falsely and fraudulently represented the nature and extent of releases of toxic, hazardous and radioactive substances from their Apollo and Parks Township facilities, have misrepresented the health and environmental risks associated with such releases and with the operations of Defendants' facilities, and have concealed information known to Defendants about the health risks and the status of knowledge regarding the dangerous properties of the toxic, hazardous and radioactive substances used, processed, generated and released from the facilities.

73.    As a direct and proximate result of Defendants' conspiracy, Plaintiffs have suffered injuries to their persons, property and economic interests and are entitled to recover damages for such injuries.

74.    All injuries and damages to Plaintiffs are substantial. Many of the injuries to the Plaintiffs, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

## Count Nine

### WRONGFUL DEATH AND SURVIVAL

75.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 74 and incorporate them by reference as if fully set forth herein.

76.    Defendants' negligent, grossly negligent, and reckless conduct was the direct and proximate cause of the wrongful death of Decedent Eva Meyers. Pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. §8301, Plaintiffs' beneficiaries are entitled to recover damages for such wrongful death. Wrongful death plaintiffs' damages include medical, funeral and other expenses and loss of support.

77.    Statutory beneficiaries, including personal representatives or executors of the estates of the decedents are entitled to assert the causes of action referred to herein on behalf of such deceased persons pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. §8302.

78.    All injuries and damages to Plaintiffs' decedents are substantial. Many of the injuries to Plaintiffs' decedents are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

## VII.

## DAMAGES

79.    As a direct and proximate result of Defendants' tortious conduct as alleged above, Plaintiffs have been injured by exposure to toxic and radioactive substances. Plaintiffs have been damaged in the following particulars and seek to recover therefor:

a.    Plaintiffs have suffered and will continue to suffer great physical pain and mental anguish and will continue to suffer great pain and anguish throughout their lifetime;

b.    Plaintiffs have incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the permanent nature of their injuries resulting from exposure to toxic and radioactive substances, from which injuries they now suffer and will continue to suffer in the future;

c.    Plaintiffs suffer a physical impairment at this time and will continue to suffer this impairment in the future due to their injuries resulting from exposure to toxic and radioactive substances;

d.    Plaintiffs suffer a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of injuries resulting from exposure to toxic and radioactive substances;

e.    Plaintiffs have suffered a present increased risk of developing cancer and other serious diseases as a result of exposure to toxic and radioactive substances, and will require medical detection and surveillance services, including medical testing, preventive screening and the commission of independent studies adequate

to quantify the adverse health effects of Defendants' releases of radioactive, toxic and hazardous substances, and to allow Plaintiffs to take preventive action and to receive the early warning necessary to increase the efficacy of treatment of disease;

f.      Plaintiffs have suffered a progressive loss of wages and earning capacity and will continue to suffer a loss of earning capacity and wages throughout their lifetimes;

g.      Plaintiffs require or will require domestic help and nursing care due to their disabilities and have been or will be required to pay for such domestic help and nursing services;

h.      Prior to the onset of their symptoms, Plaintiffs were extremely active and participated in numerous hobbies and activities, and as a result of their injuries, Plaintiffs have been and will be prevented from engaging in some of said activities which were normal to them prior to developing symptoms and injuries resulting from exposure to toxic and radioactive substances. Plaintiffs have been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life;

i.      A loss of consortium has been suffered between husbands and wives;

j.      Because Defendants' conduct was grossly negligent and reckless, Plaintiffs seek punitive damages;

k.      Wrongful death Plaintiffs seek to recover for the foregoing as a result of the wrongful and premature death of theft decedents which resulted from exposure to radioactive and toxic substances. In addition, wrongful death

Plaintiffs seek reasonable burial and funeral expenses, loss of consortium damages and compensation for decedents' lost earnings and accumulations; and

l.      Survival action Plaintiffs seek to recover for the foregoing on behalf of the estates of their decedents. In addition, these Plaintiffs seek to recover loss of gross income incurred prior to decedents' death and the loss of future earnings caused by decedents' untimely death.

80.    The conduct of Defendants, as alleged herein, was a direct, proximate and producing cause of the damages resulting from Plaintiffs' injuries and wrongful death of decedents, and of the following general and special damages that Plaintiffs have sustained both in their individual capacities, as next friends, or as personal representatives of the heirs and estates of decedents:

a.      Damages to punish Defendants for proximately causing Plaintiffs' Decedents' untimely death;

b.      Damages for the physical impairment suffered by Plaintiffs' Decedents prior to death;

c.      Damages for the disfigurement suffered by Plaintiffs' Decedents prior to death;

d.      Damages for reasonable and necessary medical expenses incurred by Plaintiffs' Decedents and their estates;

e.      Damages for reasonable funeral and burial expenses incurred by Plaintiffs' Decedents' estates;

f.      Damages for Decedents' lost earnings and net accumulations;

g.   Damages for the loss of the care, maintenance, services, support, advice, counsel and consortium which Plaintiffs and Decedents' family members received from the decedents prior to last illness and death.

## VIII.

### PRAYER FOR RELIEF

81.   WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for general damages, special damages, for punitive and exemplary damages, for their attorneys' fees and costs expended herein, for prejudgment interest from the date of Plaintiffs' exposure to toxic, hazardous or radioactive substances released by Defendants, and post judgment interest on the judgment at the rate allowed by law, and for injunctive relief. PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES TRIABLE BY A JURY RAISED HEREIN.

GOLDBERG, PERSKY & WHITE, P.C.

By: _____

Bruce E. Mattock, Esquire
PA I.D. #43235
David B. Rodes, Esquire
PA I.D. #47819
Jason T. Shipp, Esquire
PA I.D. #87471
1030 Fifth Avenue
Pittsburgh, PA 15219
(412) 471-3980 (phone)
(412) 471-8308 (facsimile)

Fidelma L. Fitzpatrick, Esquire
Jonathan D. Orent, Esquire

MOTLEY RICE, LLC
321 South Main Street
Providence, RI 02903
(401) 457-7723 (phone)
(401) 457 7708 (facsimile)

Attorneys for Plaintiffs